# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 14, 2015 Session

## HEATHER DAWN LYONS HEILIG v. ROBERT TODD HEILIG

### Appeal from the Circuit Court for Hamilton County
### No. 09D158     Jacqueline S. Bolton, Judge

---

### No. E2014-00586-COA-R3-CV-FILED-JUNE 15, 2015

---

This is a post-divorce parent relocation case.  Robert Todd Heilig (Father) notified Heather Dawn Lyons Bevil,[1] formerly Helig (Mother) of his intent to move with the parties' minor son from Chattanooga to Toccoa, Georgia, about three and a half hours away, in order to assume new employment.  Mother opposed the move and filed a petition asking the trial court to disallow it.  Mother alleged that the parties were spending substantially equal intervals of time with the child, and that the move was not in the best interest of the child.  The trial court, applying the parent relocation statute, Tenn. Code Ann. § 36-6-108 (2014), found that Father was spending substantially more time with the child than Mother, and held that Mother "failed to prove that the relocation does not have a reasonable purpose, that the relocation would pose a threat of specific and serious harm to [the child] or that the Father's motive is vindictive."  The trial court allowed Father to relocate with the child.  Mother appeals, raising the issue of whether the trial court erred in its calculation of the parties' respective parenting time, and whether it should have found such time "substantially equal."  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

---

[1] Mother married Paul Christopher Bevil about two and a half years after her divorce from Father. She indicated her preference for her new surname of Bevil in her testimony at trial.  We will honor her request in this opinion, but the language of the style of this case is established by the original pleading, *i.e.*, Mother's original divorce complaint.

1

Curtis L. Bowe, III, Chattanooga, Tennessee, for the appellant, Heather Dawn Lyons Bevil.

Steven M. Jacoway and McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the appellee, Robert Todd Heilig.

## OPINION

### I.

The parties were married on May 30, 1998. They cared for two foster children during the marriage – Father's nephew Timothy (DOB 1/24/00), and Timothy's half-brother Jake (DOB 2/6/02). Before the parties' divorce, Father legally adopted the two boys, but Mother did not. One child, Cameron, was born to the marriage on August 31, 2004. Cameron, Timothy, and Jake have lived together as brothers since Cameron's birth. The parties were divorced on May 6, 2009. The permanent parenting plan (PPP) initially designated Mother as primary residential parent and provided that each party would spend 182.5 days with Cameron. The PPP was later amended several times, once by agreement and once by order of the court, so that at the time of Mother's petition opposing relocation, Father was the primary residential parent with 233 days of parenting time, and Mother had 132 days according to the PPP.

Mother filed her petition on November 7, 2013. Father answered, alleging in pertinent part as follows:

> [P]ursuant to the current Permanent Parenting Plan in place, the Mother spends less than thirty-nine (39%) percent of parenting days per year with the parties' minor son, Cameron Heilig. The Father further avers that it is not in their minor son's best interest to remain in Chattanooga instead of relocating with the Father, his stepmother and his two stepbrothers . . . to Toccoa, Georgia.
>
> [T]he Father's relocation does have a reasonable purpose in that the Father has taken a position as a Pastor of Student Ministries at The Pointe Church, a church affiliated with a Church of God located in Eastanollee, Georgia. The Father took this position after being laid off from his prior employment and being unable to obtain any new employment in or about the Chattanooga area. Furthermore, the minor son's relocation with Father, stepmother, and his two

2

stepbrothers would not cause any specific or serious harm. The Father has determined that the local public schools in the Toccoa, Stephens County, Georgia area are excellent. There are numerous youth sports programs available in that area in which the minor son may participate. Finally, the Father is not being vindictive in relocating to Toccoa, Georgia, particularly as he attempted to obtain alternative employment in or about the Chattanooga, Tennessee area and was unable to do so.

A hearing occurred on January 15, 2014. Six persons testified – Mother and Father, both stepparents, a counselor who had seen Cameron, and the stepfather's mother. The trial court also took Cameron's testimony in an in camera hearing. The parties presented proof pertaining to the twelve-month period immediately preceding Mother's petition. Mother presented evidence showing that she had actually spent 147 days of parenting time, 15 more than anticipated by the PPP. Mother, on the other hand, calculated that she had spent a total of 311 hours "parenting" Cameron over the past year, consisting of time spent volunteering at his school, accompanying him to his sports teams' practices and games, and the like. Mother argued that these 311 hours should be divided by 8 to yield a total of 38 additional days for which she should be given credit. Father readily admitted that he had agreed to allow Mother extra parenting days, and he did not controvert Mother's 147-day total for the year, but denied that she should be given credit for the additional scattered 311 total hours Mother was with Cameron over the past year, for the purposes of calculating time under the parent relocation statute.

In its memorandum opinion and order, the trial court ruled in pertinent part as follows:

> Though disputed, the Court finds that the Father spends substantially more time with the child than the Mother[;] therefore, the provisions of T.C.A. § 36-6-108(d)(1)(A-C) apply.
>
> First the Court will address the issue which is disputed as to substantial intervals of time which Mother claims she has more than Father opines. Mother claims that in addition to the regular days allowed on the Parenting Plan, she has at least 300 more "hours" of time with the child through her activities at the ballfield [sic] and at the child's school. The Tennessee Department of Human Services Guidelines for

3

calculations of a "day" are delineated in Rule 1240-2-4.02(10) of the guidelines.

> "Days" – For purposes of this chapter, a "day" of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Therefore, it is logical when determining for visitation purposes the definition of a day, the Court needs to look no further than the Rule as hereinabove stated.

[T]hough the Court certainly commends the Mother for her extra efforts for the benefit of the parties['] child, the Court finds that the 300 additional hours do not constitute what would be considered a "day" according to the rules of law that the Court must apply.

* * *

Mother[] testified she has spent substantially more time with the child, Cameron, than contemplated in the Permanent Parenting Plan. This is not disputed by Father. He is the one who offered Mother the extra time.

* * *

The Court specifically finds that Mother has failed to prove that the relocation does not have a reasonable purpose, that the relocation would pose a threat of specific and serious harm to Cameron or that the Father's motive is vindictive.

The trial court ordered that Father be allowed to relocate to Toccoa, Georgia with Cameron. Mother timely filed a notice of appeal.

## II.

Mother raises the following issues, as quoted verbatim from her brief:

> 1. [Whether] the Circuit Court erred by failing to apply Tennessee law to specifically calculate, compare, and find substantially equal parenting time.

> 2. [Whether] the Circuit Court erred by failing to determine substantially equal parenting time pursuant to Tennessee law and then failed to apply the best interest standard.

## III.

In this non-jury case, our standard of review is de novo upon the record of the proceedings below; however, the record comes to us with a presumption of correctness as to the trial court's factual determinations, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Goddard v. Goddard*, No. E2011-00777-COA-R3-CV, 2012 WL 601183 at *3 (Tenn. Ct. App. E.S., filed Feb. 24, 2012); *Rudd v. Gonzalez*, No. M2012-02714-COA-R3-CV, 2014 WL 872816 at *6 (Tenn. Ct. App. W.S., filed Feb. 28, 2014). "For questions of law, the standard of review is de novo without a presumption of correctness afforded to the lower court's conclusions of law." *Thorneloe v. Osborne*, No. E2012-02004-COA-R3-CV, 2013 WL 4606375 at *2 (Tenn. Ct. App. E.S., filed Aug. 26, 2013); *Edgeworth v. Edgeworth*, No. W2006-01813-COA-R3-CV, 2007 WL 2403356 at *5 (Tenn. Ct. App. W.S., filed Aug. 23, 2007).

"In applying the *de novo* standard, we are mindful that '[t]rial courts are vested with wide discretion in matters of child custody and that the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion.'" *Aragon v. Aragon*, No. M2013-01962-COA-R3-CV, 2014 WL 1607350 at *4 (Tenn. Ct. App. M.S., filed Apr. 21, 2014). "Because [c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings, appellate courts are reluctant to second-guess a trial court's decisions." *Lower v. Lower*, No. M2013-02593-COA-R3-CV, 2014 WL 5089346 at *4 (Tenn. Ct. App. W.S., filed Oct. 8, 2014) (internal quotation marks omitted). As we have observed, "[r]elocation cases are fact intensive and require an examination of the specific facts related to the rationale and motives for moving." *Carman v. Carman*, No. M2011-01265-COA-R3-CV, 2012 WL 1048600 at *4 (Tenn. Ct. App. M.S., filed Mar. 26, 2012).

IV.

The Tennessee parent relocation statute, Tenn. Code Ann. § 36-6-108, controls the resolution of the issues on this appeal. The Supreme Court construed this statute in *Kawatra v. Kawatra*, 182 S.W.3d 800, 802-03 (Tenn. 2005) stating in pertinent part as follows:

> In 1998, our state legislature enacted Tennessee Code Annotated section 36–6–108, which applies when a parent seeks to relocate outside the state or more than 100 miles[2] away from the other parent residing within the state. *See* Tenn. Code Ann. § 36–6–108(a) (2001). The statute requires the trial court to determine whether the parents are "actually spending substantially equal intervals of time with the child." *Id.* at (c), (d). If the parents are spending substantially equal intervals of time with the child, section 36–6–108(c) provides that "[n]o presumption in favor of or against the request to relocate with the child shall arise." Instead, the court must determine whether relocation of the child is in the child's best interests. *Id.* at (c).
>
> The approach differs if the parents are "not actually spending substantially equal intervals of time with the child." If the parent spending the greater amount of time with the child seeks to relocate with the child, the court shall permit the relocation unless it finds that: 1) the relocation fails to have a reasonable purpose; 2) the relocation poses a threat of "specific and serious harm" to the child that outweighs the threat of harm that a change of custody would pose to the child; or 3) the parent has a vindictive motive for relocating. *Id.* at (d)(1)-(3). If one or more of these grounds exist, the court shall determine whether relocation is in the child's best interests. *Id.* at (e).

"The parent opposing the relocation bears the burden of proof to establish one of these three grounds, and if he or she fails to do so, the relocation shall be permitted." *Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961 at *3 (Tenn. Ct. App. W.S., filed Aug. 9, 2011); *Redmon v. Redmon*, No. W2013-01017-COA-R3-CV, 2014 WL 1694708 at *5 (Tenn. Ct. App. W.S., filed Apr. 29, 2014).

---

[2] In 2014, the legislature amended the statute to change "100 miles" to "50 miles." See 2014 Pub. Acts Ch. 617. The language of the statute otherwise remains identical.

Mother testified as follows in support of her argument that the trial court should find that she and Father were actually spending substantially equal intervals of time with Cameron:

Q: Now, you have – what is your visitation by the parenting plan? What does it show as being your number of days?

A: The parenting plan shows 132 days.

Q: In actuality, say the past year, 2013 – I asked you to look through the calendar and count how many actual days you had. How many days?

A: Actual days was 147.

* * *

Q: In addition to those days, what are some activities that Cameron does that you're involved in?

A: Cameron is extremely, extremely involved in sports . . . As him being involved in a sport, being the mom that I am, I have been the team mom on many of those teams, including football and baseball, et cetera.

In addition to his sports and my involvement going to all of his practices and all of his games, I'm also involved in his school. At the school I volunteer there regularly, sometimes weekly. The classroom mom, I have been first, second, third, fourth – excuse me. First grade I was not the classroom mom; I just did field trips and volunteered in the classroom. And then second through fourth grade I have been the classroom mom every year, PTA committee member, go on all the field trips, and actually sub in the class.

Q: So really then it's fair to say that you spend a lot more time than just 147 days?

A: Oh, absolutely.

7

Q: Is this during the daytime when this is going on?

A: The baseball is during the week and on the weekends, and the school is during the week, the weekday. And on your sports practices, they're always during the week. Typically it's a Tuesday/Thursday or a Monday/Wednesday type of schedule. So I'm always at the ball field three to four times a week during the week with Cameron.

*     *     *

Q: So considering the fact that the calendar shows you had him actually 147 days that were your days –

A: Right.

Q: – and all of the other times that you had him, do you think it works out where you had about 50/50 in –

A: I do. I ran some numbers and looked at hours actually spent. You know, for me if I look at as a parent in a 24-hour day, you're parenting – you're working eight hours, you're sleeping eight hours, and you're parenting eight hours. So actual face-to-face parenting time, when I calculated the times that I was at the ball games and ball practices that [Father] doesn't come to as often, and then I calculate the time that I'm on field trips with Cameron and actually parenting him face-to-face over the last – over the last year, I came up with an additional 311 hours of additional parenting time on top of my 147.

So for me I look and say, okay, if a typical parenting day really consists of 8 hours, and I just divided 8 into 311. That comes up to an additional 38 days that I actually was with Cameron parenting on top of my 147.

This Court has previously addressed the manner in which parenting time is to be calculated for purposes of determining whether the parents are spending substantially equal intervals of time with a child. In *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000 (Tenn. Ct. App. M.S., filed Dec. 30, 2003), the father "contended that if one calculated the time each parent spent with the children on the basis of waking

8

hours alone, their time would be substantially equal" and "calculated his time on the basis of the hours between 2:30 or 3:00 p.m. on the days when he picked the children up from school, and 8:00 p.m. when he returned them to the mother." *Id.* at *2, 3. Rejecting this calculation method, we agreed with the trial court that "it was inappropriate to base its decision on waking hours alone, because such an analysis discredits the mother's continuing responsibility for the children during the time they are in school, and even when they are asleep." *Id.* at *3. We observed in *Clark* that "the responsibilities of a parent do not end when the children go to sleep or when they are in school," and concluded that "we see no reason to adopt the 'waking hours' methodology proposed by Mr. Clark either as a general principle or for the purposes of this particular case." *Id.* at *5.

In *Helton v. Helton*, No. M2002-02792-COA-R3-CV, 2004 WL 63478 at *8 (Tenn. Ct. App. M.S., filed Jan. 13, 2004), the father made an argument similar to Mother's in the present case in that he argued certain blocks of time less than a day should be calculated as "a day" for purposes of the parent relocation statute:

> To reach the conclusion that he actually spends substantially equal time with the child, [father] asks us to count as full days those times when he has the child for a portion of the day. For example, he argues that on those weekends when he picks the child up from school on Friday and returns the child to school on Monday morning, he has the child for all or part of four days. Applying that method of calculation to the visitation schedule, he asserts that he has the child for some part or all of 187 days each year. He accordingly contends that even though he may have to return Luke to Ms. Buscher on some of those days, the schedule amounts to a substantially equal sharing of the child by the parties. The fallacy with this argument is that if Mr. Helton is entitled to claim as full days those days on which he has visitation for part of the time, then Ms. Buscher would be similarly entitled to claim the portion during which she has custody as a full day also. Otherwise, Mr. Helton would receive credit for an entire day during which he only had the child for a few hours. The result is that the total for both parents would amount to more than 365 days per year. We decline to adopt such a method of calculation.

In *Collins v. Goode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097 at *2 (Tenn. Ct. App. M.S., filed Apr. 27, 2004), the Court, citing *Clark* and *Helton*, stated that

"[t]his court has consistently declined to approve various 'rounding-up' theories proposed by non-residential parents to inflate the amount of time they have spent with their children."

In *Kawatra*, the Supreme Court addressed this issue, providing the following guidance:

> Tennessee Code Annotated section 36–6–108 does not define what constitutes "actually spending substantially equal intervals of time." We conclude, however, that the time that the parties' child was attending school should not be used to reduce the total number of hours available for computation. The responsibilities of a parent do not end when a child is asleep, at school or day care, or otherwise outside of the parent's presence. Furthermore, the use of hours as the sole basis for computing the time that each parent spent with the child does not provide the trial court with the flexibility needed to consider the circumstances of each case. Rather, the "time actually spent" with each parent should be computed in units of a day. *See also* Tenn. Comp. R. & Regs. 1240–2–4–.02(10) (2005) (adopting a definition of "day" under the Child Support Guidelines).

> To determine the number of days to credit to each parent for purposes of Tennessee Code Annotated section 36–6–108(c) and (d), the trial court should first examine the provisions of the residential schedule. The trial court should then consider additional time each parent spent with the child that is not reflected in the residential schedule. If either parent violated the terms of the residential schedule by interfering with the other parent's time with the child, the trial court should make any necessary adjustments to reflect the time that the child should have been in the care of the other parent. To allocate a day to one parent when both parents claim credit for that day, the trial court should examine 1) the hours each parent actually spent with the child on that day; 2) the activities in which each parent engaged with the child; 3) the resources the parent expended on the child's behalf during that time period, including the costs of a meal or any other costs directly related to that parent's care and supervision of the

10

child; and 4) any other factor that the trial court deems relevant.

182 S.W.3d at 803-04 (footnotes omitted).

Under these authorities, we must reject Mother's proposed calculation method of parenting time. Like the trial court, we commend Mother for her support of Cameron and involvement in his school and sports activities. The proof in the record reflects that Mother has been an excellent parent. But calculating parenting time by lumping together various scattered hours spent with the child at sports practices or at school, and dividing the total by 8 under a "waking hours" theory, does not comport with the parent relocation statute, the Child Support Guidelines' definition of "a day," or case law precedent as discussed above.

Mother argues that the trial court erred by failing to find the specific number of days each parent actually spent with the child. Although this would have been the better practice, the absence of a specific finding in this regard does not require us to vacate the court's ruling under the circumstances presented here. It is clear from the trial court's order that it properly rejected Mother's argument that her estimated 311 hours spent with Cameron over the course of a year should amount to any additional "days." Thus, we are left with the largely undisputed assertion that Mother actually spent 147 days, or 40% of the time, with the child in the 12 months preceding her petition. The trial court correctly held that a 60% – 40% split between the parents does not amount to "substantially equal" parenting time under the relocation statute. *See Kawatra*, 182 S.W.3d at 804 (split of 37.8% – 62.2% "percentages do not permit us to conclude that the parties spent substantially equal intervals of time with the child"). "This Court has twice held that a split of custodial parenting time which approximated 60%-40% was not substantially equal." *Kawatra v. Kawatra*, No. M2003-01855-COA-R3-CV, 2004 WL 1944135 at *5 (Tenn. Ct. App. E.S., filed Feb. 28, 2005) (citing *Connell v. Connell*, No. 03A01-9808-CV-00282, 2000 WL 122204, (Tenn. App. E.S., filed Jan. 25, 2000) and *Branham v. Branham*, No. E2003-01253-COA-R3-CV, 2004 WL 716729 (Tenn. App. E.S., filed Apr. 2, 2004, petition to rehear granted May 5, 2004)).

The trial court also held that Mother "failed to prove that the relocation does not have a reasonable purpose, that the relocation would pose a threat of specific and serious harm to [the child] or that the Father's motive is vindictive." Mother has not appealed these rulings.

V.

The judgment of the trial court is affirmed.  Costs on appeal are assessed to the appellant, Heather Dawn Lyons Bevil.  The case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed below, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE